UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. |
| | : | 3:13-CR-156 (JCH) |
| | : | |
| v. | : | |
| | : | |
| FRANK D. GOMEZ, | : | |
| Defendant. | : | JUNE 21, 2016 |
| | : | |

RULING RE: COMPETENCY

## I.   BACKGROUND

On August 5, 2013, a federal grand jury returned an Indictment charging defendant

Frank D. Gomez ("Gomez") with one count of possession with intent to distribute cocaine

base; one count of possession with intent to distribute marijuana; one count of possession

of a firearm in connection with a drug trafficking crime; and one count of possession of a

firearm by a convicted felon.  See Indictment (Doc. No. 11).  Several months later, on

November 14, 2013, Gomez, through counsel, filed a Motion seeking evaluation of his

competency to stand trial pursuant to section 4241(a) of title 18 of the United States Code,

see Mot. for Court-Ordered Evaluation of Def. to Determine Competency (Doc. No. 30),

which the court granted, see Order for Temporary Commitment for Competency

Evaluation and Report (Doc. No. 33).

Following the court's Order, Gomez was evaluated by psychologist Dana Brauman

("Dr. Brauman") at the Metropolitan Correctional Center (MCC) in New York, New York.

Dr. Brauman ultimately concluded that, at the time of evaluation, Gomez was not

competent to stand trial.  Upon receipt of Dr. Brauman's report (the "Brauman Report"),

the court scheduled a competency hearing, which was held on March 21, 2014.  See

Minute Entry (Doc. No. 41).  After the hearing, the court found that Gomez was "suffering from a mental disease or defect[ ] rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense," and therefore committed Gomez to the custody of the Attorney General for a period of four months for hospitalization and treatment.  Order Committing Def. for Competency Evaluation and Treatment (Doc. No. 42).

While in custody, Gomez was evaluated by Dr. Christina Pietz ("Dr. Pietz"), a certified forensic psychologist working at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"), who prepared a report (the "Pietz Report") in which she opined that, at the time of her evaluation, Gomez was competent to stand trial.  After the court received Dr. Pietz's report, the court held a second competency hearing at which both Dr. Brauman and Dr. Pietz testified.  See Hr'g Tr. at 2 (Doc. No. 61).  Following the hearing, Gomez filed a Motion asking the court to find him incompetent to stand trial or, in the alternative, to continue the matter for 60 days to allow his counsel "to receive additional requested records and conduct an updated competency evaluation."  Def.'s Post-Hr'g Mem. Re: Competency and Mot. for Continuance at 1 (Doc. No. 62).  The court granted Gomez's Motion to Continue over the government's objection and scheduled oral argument on Gomez's Motion to be declared incompetent.  See Order (Doc. No. 71).

In early February 2015, Gomez was evaluated by Tobias Wasser ("Dr. Wasser"), a certified forensic psychiatrist who subsequently prepared a report (the "Wasser Report") in which he opined that, at the time of his evaluation, Gomez was "afflicted with a mental disease or defect, which renders him unable to formulate and sustain a rational

understanding of the proceedings against him or to assist in his defense." Wasser Report at 21 (Doc. No. 78-1). After reviewing Dr. Wasser's report and hearing argument from the parties on Gomez's Motion, the court found, by a preponderance of the evidence, that Gomez was "suffering from a mental disease or defect rendering him mentally incompetent," and again ordered that Gomez be committed to the custody of the Attorney General for purposes of hospitalization and treatment for a period not to exceed four months. Order Committing Def. for Competency Evaluation and Treatment (Doc. No. 96).

In accordance with the court's Order, Gomez was again committed to MCFP Springfield, where he was evaluated by Lea Ann Preston Baecht ("Dr. Baecht"), a certified forensic psychologist. Dr. Baecht prepared a report (the "Baecht Report") in which she opined that "Gomez is competent to proceed with his legal case" and that he "will remain competent for the foreseeable future." Baecht Report at 13 (Gov't's Ex. 4) (Doc. No. 142). After receiving and reviewing Dr. Baecht's Report, the court held a competency hearing at which Dr. Pietz, Dr. Wasser, and Dr. Baecht testified. See Minute Entry (Doc. No. 137) (noting competency hearing held on April 20, 2016); Minute Entry (Doc. No. 140) (noting continued competency hearing held on May 18, 2016); Marked Exhibit & Witness List (Doc. No. 142). The court subsequently held an oral argument at which the parties set forth their respective positions regarding Gomez's competency. See Minute Entry (Doc. No. 145).

For the reasons that follow, the court now finds that Gomez is competent to stand trial on the charges pending against him.

## II.   LEGAL STANDARDS

The right of a defendant who is incompetent not to stand trial on criminal charges

is secured by the Due Process Clause of the United States Constitution.  See United States v. Kerr, 752 F.3d 206, 215 (2d Cir. 2014).  This important constitutional right is further "safeguarded by 18 U.S.C. § 4241, which requires the district court, upon its own motion if necessary, to hold a competency hearing 'if there is reasonable cause to believe that the defendant may . . . [be] mentally incompetent.'"  Id. (quoting 18 U.S.C. § 4241(a)).  A defendant's right to avoid standing trial while incompetent "'spans the duration of a criminal proceeding,' including sentencing."  United States v. Jackson, -- F. App'x ---, 2016 WL 1743497 at *1 (2d Cir. May 3, 2016) (quoting United States v. Arenburg, 605 F.3d 164, 168-69 (2d Cir. 2010) (per curiam)).

The court uses a familiar, two-pronged test to assess whether a defendant is competent to stand trial, asking:  (1) "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and (2) "whether [the defendant] has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960).  "In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment."  United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995) (citation omitted).

Although federal statutes make clear that competency in federal cases must be established by a preponderance of the evidence, see 18 U.S.C. § 4241(d), the relevant statutory provisions do not allocate the burden of proof, and whether the burden of establishing competency is on the defendant or the government has not been squarely decided by the Second Circuit or the Supreme Court, see United States v. Garcia, 282

4

F. App'x 14, 17 (2d Cir. 2008) (summary order) ("A court determines competency by a preponderance of the evidence, although Garcia correctly observes that the burden of proof in establishing competency is undecided in this Circuit and by the Supreme Court."); Nichols, 56 F.3d at 410 (declining to resolve the question of who bears the burden of establishing competency); United States v. Ditomasso, No. 14-cr-160 (SAS), 2015 WL 7758535 at *1 (S.D.N.Y. Dec. 1, 2015) (noting that neither the Second Circuit nor the Supreme Court has decided who bears the burden of establishing competency).[1]  Moreover, the Circuits that have addressed the question of who bears the burden of establishing competency are split.  See Ditomasso, 2015 WL 7758535 at *1 (noting that the Fourth, Seventh, Eighth, and Tenth Circuits place the burden of proof on the defendant, while the Third, Fifth, and Ninth Circuits place the burden of proof on the government).

Although a definitive answer on the question of who bears the burden of establishing competency has not been set forth by the Supreme Court, in Cooper v.

---

[1] In earlier briefing, Gomez argued that the Second Circuit has, in fact, resolved the issue of who bears the burden of establishing competency, and that the burden has been allocated to the government. See Def.'s Post-Hr'g Mem. Re: Competency and Mot. for Continuance at 9 (Doc. No. 62) (quoting Brown v. Warden, Great Meadow Correctional Facility, 682 F.2d 348, 349 (2d Cir. 1982)).  In the opening lines of Brown, the Second Circuit noted that, "once a defendant's competency has been called into question, either by the defendant or the prosecution expressly raising the issue, or through the presence of 'warning signals' which cause the court to raise the question sua sponte, the burden is placed on the prosecution to prove that the defendant is mentally competent to stand trial."  Brown, 682 F.2d at 349.  However, the issue in Brown was whether the "quantum of proof . . . by which the New York State courts required the prosecution to prove [the defendant's] mental competency to stand trial[ ] was constitutionally insufficient," id., which means the statement in Brown on which Gomez relies is arguably both (1) dicta, and (2) an interpretation of New York state law on competency, not an interpretation of the procedures and standards associated with competency determinations in federal court and under federal law.

Nonetheless, the court acknowledges that the language in Brown is at least arguably in tension with pronouncements by the Second Circuit and various district courts that the question of who bears the burden of establishing competency has not been resolved in this Circuit.  See, e.g., Garcia, 282 F. App'x at 17.  But for the reasons explained infra, see 18 n.7, for purposes of this Ruling the court need not—and does not—resolve the question of whether the Second Circuit has allocated the burden of establishing competency and, if so, to whom.

<u>Oklahoma</u> the Supreme Court noted, in dicta, that "Congress has directed that <u>the accused</u> in a federal prosecution must prove incompetence by a preponderance of the evidence," <u>Cooper</u>, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241) (emphasis added), which is consistent with the general criminal law principal that "[a] defendant may be presumed to be competent," <u>United States v. Pope</u>, 146 F. App'x 536, 539 (2d Cir. 2005) (summary order).  Other courts in this Circuit have relied on the foregoing to conclude that the burden of establishing incompetence to stand trial rests with the defendant.  <u>See</u> <u>Ditomasso</u>, 2015 WL 7758535 at *1 n.9 (collecting cases).  Ultimately, however, whether the burden of establishing competence is on the defendant or the government may primarily be an academic concern; as the Second Circuit has made clear, "the allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent."  <u>Nichols</u>, 56 F.3d at 410 (quoting <u>Medina v. California</u>, 505 U.S. 437, 449 (1992)).

## III.    DISCUSSION

In support of their respective positions on whether Gomez is competent to stand trial on the charges against him, the parties have submitted conflicting reports and testimony from various mental health professionals.  In the ensuing discussion, the court summarizes the evidence submitted by the parties, including the reports of Dr. Brauman, Dr. Pietz, Dr. Wasser, and Dr. Baecht, the testimony of the latter three individuals at the competency hearings on April 20, 2016, and May 18, 2016, and the court's own observations of Gomez's behavior during those hearings.  The court then

analyzes this evidence, ultimately concluding that Gomez is presently competent to stand trial.

A.   <u>Reports</u>

As noted earlier in this Ruling, three psychologists and one psychiatrist have evaluated Gomez in connection with his competency to stand trial on the federal charges pending against him, often reaching conflicting conclusions on the question of Gomez's competency.[2]  The court will briefly summarize each of these reports in turn.

1.   Dr. Brauman

Dr. Brauman's report, which is dated February 21, 2014, is based upon approximately 10 hours of evaluations conducted over the course of a month in January and February 2014.  As part of Dr. Brauman's evaluation, Gomez completed numerous psychological tests.  <u>See</u> Brauman Report at 1-2 (Gov't's Ex. 12) (Doc. No. 146).  Dr. Brauman also conducted phone interviews with Gomez's lawyer, counsel for the government, and Gomez's mother.  <u>See</u> <u>id.</u> at 2.  Finally, Dr. Brauman reviewed various legal documents and medical records associated with Gomez.  <u>See</u> <u>id.</u>

Dr. Brauman reported that, at the time of her evaluation, Gomez had two prior psychiatric hospitalizations—"one at the age of 12 due to his depressive symptoms and the other at the age of 23, due to his substance abuse," <u>id.</u> at 15—as well as a history of numerous periods of treatment at hospital emergency departments, often for complaints that appeared related to Gomez's substance abuse, <u>id.</u> at 7.  The substance abuse in

---

[2] Gomez was also evaluated in September 2013 by Cristina Sanchez-Jacquez, M.D., in connection with charges pending in Connecticut state court.  <u>See</u> Def.'s Post-Hr'g Mem. Re: Competency and Mot. for Continuance at 2 (Doc. No. 62).  Dr. Sanchez-Jacquez concluded that Gomez was competent to stand trial.  <u>See</u> <u>id.</u>

question is a multi-year history of daily use of phencyclidine ("PCP") and marijuana; Gomez has "maintained sobriety only while incarcerated." Id. at 15.  According to Dr. Brauman, Gomez denied a history of physical, sexual, or verbal abuse in childhood, id., which Gomez's mother corroborated, id. at 3.

In her report, Dr. Brauman observed that, during Gomez's stay at MCC New York, staff members reported that Gomez was "generally cooperative."  Id. at 7.  Dr. Brauman also noted that several of the psychological tests administered to Gomez were invalid for reasons ranging from Gomez's failure to "put forth sufficient effort" to Gomez's "response style," e.g., the fact that he answered "very true" to all items on a 344-item assessment.  Id. at 8-9.  Of the tests that produced valid results, Gomez's performance indicated an "inability to process information in an organized manner," "mild[ ] impair[ment]" in his ability to complete "tasks of verbal knowledge and verbal abstract reasoning," and an average ability with respect to "non-verbal abstract reasoning and visuomotor coordination."  Id. at 9.

On the basis of her observations and testing, Dr. Brauman diagnosed Gomez with "Substance/Medication-Induced Mild Neurocognitive Disorder, [Phencyclidine], with behavioral disturbance," "Phencyclidine (Hallucinogen) Use Disorder, Moderate to Severe, In a Controlled Environment," and "Cannabis Use Disorder, Moderate to Severe, In a Controlled Environment."  Id. at 10.  Dr. Brauman noted that, although Gomez "exhibited a moderately adequate factual understanding of the adversarial nature of court proceedings . . . his rational ability is impaired due to his cognitive impairments."  Id. at 13.  Dr. Brauman concluded that Gomez was "unable to adequately and consistently assist counsel with his defense at this time, as well as retain all factual

and rational explanations of courtroom behavior and proceedings." Id. at 15.  Thus, Dr.
Brauman concluded Gomez was not competent to stand trial.

          2.     Dr. Pietz

      Dr. Pietz's report, which is dated September 29, 2014, is based upon her
evaluation and observation of Gomez over a four-month period from June through
September 2014.  See Pietz Report at 1 (Gov't's Ex. 11) (Doc. No. 146).  Dr. Pietz did
not conduct psychological testing on Gomez, but she did review various legal
documents associated with this case, as well as some of Gomez's medical records and
Dr. Brauman's report.  See id. at 1-2.  Dr. Pietz incorporated by reference Gomez's
"social, legal, medical, and psychiatric history" as reported by Dr. Brauman and then
focused her report on Gomez's behavior while at MCFP Springfield in the summer and
early fall of 2014.  See id.  Dr. Pietz reported that, although Gomez was evaluated on
multiple occasions for purposes of ascertaining whether he suffered from a mental
illness that could be treated by medication, there was repeatedly "no evidence that Mr.
Gomez was suffering from a mental illness," and therefore "medication was not
indicated."  Id. at 2, 4.  Dr. Pietz also noted that, after Gomez received a disciplinary
infraction, he repeatedly requested Dr. Pietz's assistance in fighting the infraction in a
manner that "demonstrated knowledge of the disciplinary process in the Bureau of
Prisons" and "represented organized thinking and his ability to rationally communicate
his concerns."  Id. at 4.  Relatedly, although Gomez professed ignorance regarding
"what a lawyer was or the purpose of a judge, he would later follow-up with specific
legal questions which indicated a thorough understanding of criminal court procedure."
Id.

Dr. Pietz concluded that Gomez "appeared to be functioning at a below average range of intelligence" and showed "some signs of personality difficulties." Id. at 4, 8. However, Dr. Pietz opined that "such difficulty is not due in any part to a present mental disease or defect." Id. at 8. Dr. Pietz diagnosed Gomez with "Phencyclidine Use Disorder, moderate, in sustained remission, in a controlled environment," and "Cannabis Use Disorder, moderate, in sustained remission, in a controlled environment." Id. at 6. On the basis of the foregoing observations and analysis, Dr. Pietz reported that Gomez was "competent to proceed" to trial on the charges against him. Id. at 8.

3.     Dr. Wasser

Dr. Wasser's report, which is dated March 25, 2015, was completed at the request of Gomez's counsel and is based upon four hours of examination of Gomez on two occasions in February 2015, as well as four-and-a-half hours of psychological testing completed in February 2015 by Dr. Madelon Baranoski at Dr. Wasser's request. See Wasser Report at 1 (Doc. No. 78-1). Dr. Wasser also reviewed legal documents and medical records associated with Gomez and the prior reports of Dr. Brauman and Dr. Pietz. See id. at 2.

Dr. Wasser reported that Gomez first received mental health treatment at the age of 12, during a period following Gomez's brother's death in a car accident. See id. at 7. Like Dr. Brauman, Dr. Wasser noted that Gomez "presented to the Emergency Department (ED) at [Yale New Haven Hospital] on numerous occasions between 1991 and 2006," often after taking PCP. Id. at 7-8. Dr. Wasser reported that, on at least one of these occasions, Gomez was briefly given Risperidone, an anti-psychotic medication, to treat his symptoms. See id. at 7.

Dr. Wasser noted that, during Gomez's prior periods of incarceration, he "had a history of intermittent psychotic symptoms requiring treatment with antipsychotic medication and transfer to the DOC inpatient mental health unit." Id. at 8-10. On at least one occasion while incarcerated, however, Gomez made "suicidal statements and gestures" that "appeared to be motivated by his desire to be transferred to a different correctional facility." Id. at 8. There appears to have been some disagreement among staff in the Department of Correction's (DOC) inpatient mental health unit about both whether Gomez was malingering and whether Gomez's psychosis was substance induced.[3] See id. at 9. Dr. Wasser also reported that Gomez was diagnosed by a staff psychiatrist at Wyatt Detention Center as having a history of Traumatic Brain Injury, which may stem from an incident in 2006 when Gomez was hit on the head by a police baton. See id. at 9-10. Like the other mental health professionals who have evaluated Gomez, Dr. Wasser noted that Gomez reports an extensive history of substance abuse, including a multi-year period in which he consumed PCP on a daily basis. See id. at 10.

With respect to Dr. Wasser's evaluations of Gomez, Dr. Wasser reported that Gomez's "thought process was initially goal-directed," but as the interview progressed Gomez began demonstrating "irrational and illogical thought processes." Id. at 12. In particular, Dr. Wasser noted that Gomez "had certain fixed beliefs about the court system and his present legal circumstances and was unwilling to consider alternate possibilities." Id. Gomez also reported experiencing paranoia and auditory hallucinations. See id. at 12-13. On the basis of his evaluations, Dr. Wasser concluded

---

[3] Dr. Wasser's opinion is that Gomez is not malingering and his psychosis is not exclusively substance induced. See Wasser Report at 20 (Doc. No. 78-1).

that Gomez's "general fund of knowledge and social awareness were within the average range," Gomez's "capacity for abstract reasoning was below average," and overall his "general intelligence was . . . in the low average range." Id.

Dr. Wasser's report on Gomez's understanding of the criminal proceedings against him is consistent with his analysis that Gomez's general fund of knowledge is average, but his capacity for abstract reasoning is below average. More specifically, Dr. Wasser noted that Gomez could accurately identify and explain the charges against him, name and explain the role of his lawyer, the lawyer for the government, and the undersigned in his case, and retain new information Dr. Wasser imparted to him during the evaluation, such as the meaning of the term "mandatory minimum," for a period of time (although he was not able to recall the meaning of "mandatory minimum" at a subsequent evaluation the following week). Id. at 13, 15. However, Gomez struggled with concepts Dr. Wasser viewed as being "abstract," such as the role of the jury or the meaning of the word "trial." Id. Dr. Wasser also reported that Gomez's thought process with respect to plea bargaining was "rigid and irrational." Id. at 15.

On psychological tests administered by Dr. Baranoski, Gomez "demonstrated deficits in his verbal expression and abstract reasoning," and an "overall low-average IQ." Id. at 18. Tests of verbal fluency revealed that, "in conversation [Gomez] can understand more than he can express." Id. The testing revealed no evidence that Gomez was malingering or otherwise trying to "feign[ ] or exaggerat[e] psychiatric symptoms." Id. Dr. Wasser opined that these results "[are] consistent with the prior psychological evaluation completed by Dr. Brauman." Id.

On the basis of his evaluation, Dr. Wasser diagnosed Gomez with "Unspecified

Schizophrenia Spectrum Disorder," "Language Disorder," "Phencyclidine Use Disorder, Severe, In a Controlled Environment," and "Cannabis Use Disorder, Severe, In a Controlled Environment." Id. at 19.  Dr. Wasser concluded that, at the time of evaluation, "Gomez is afflicted with a mental disease or defect, which renders him unable to formulate and sustain a rational understanding of the proceedings against him or to assist in his defense." Id. at 21.  Dr. Wasser opined, however, that "there is a substantial probability that [Gomez] could be restored to competency through a period of commitment for the purposes of hospitalization and treatment." Id. at 22.

    4.    Dr. Baecht

Dr. Baecht's report, which is dated November 30, 2015, was prepared following Gomez's second period of commitment for purposes of competency restoration at MCFP Springfield from mid-July to mid-November 2015.  See Baecht Report at 1 (Gov't's Ex. 4) (Doc. No. 142).  During this period at MCFP Springfield, Gomez was "routinely observed by correctional and clinical staff," and "participated in numerous individual clinical interviews" with Dr. Baecht.  Id. at 1-2.  Dr. Baecht also administered psychological tests to Gomez, reviewed court documents and medical records associated with his case, and reviewed the prior competency reports completed by Dr. Brauman and Dr. Pietz.[4]

Like Dr. Wasser, Dr. Baecht noted that, during prior periods of incarceration,

---

[4] Dr. Baecht did not review Dr. Wasser's report prior to preparing her own report, because Dr. Wasser's report "was not included in the packet of information provided to [Dr. Baecht] by Mr. Gomez's defense counsel."  Baecht Report at 3 (Gov't's Ex. 4) (Doc. No. 142).  At the competency hearing, Dr. Baecht testified that Gomez's defense counsel later told Dr. Baecht that she had emailed Dr. Wasser's report to her, but for some reason Dr. Baecht did not receive it.  (Dr. Baecht suggested that it was possible the email containing that particular file was screened out by her spam system, or that she might have inadvertently deleted it.)

Gomez was intermittently sent to inpatient mental health treatment units and
occasionally prescribed antipsychotic medications.  See id. at 3.  Dr. Baecht also noted
that there was some question about whether Gomez was malingering and whether his
psychosis was substance induced, with different staff members at the DOC expressing
conflicting opinions in their treatment notes.  See id. at 3-4.  At least one staff member
opined that Gomez "[h]as a manipulative manner about him," as he "quizzed [the staff
member] about [mental health] ability to assist him in a potential assault case that may
be charged against him."  Id. at 4.  On at least one occasion, Gomez denied ever
experiencing auditory hallucinations.  See id.  Like Dr. Wasser, Dr. Baecht noted that,
on one occasion, Gomez threatened suicide in a manner judged by correctional staff to
be "manipulative" and an attempt to be transferred to another facility.  Id.

    Dr. Baecht reported that, during her initial evaluation of Gomez, he "did not report
or describe any symptoms of psychosis or mania," and he "denied believing he currently
needed any type of psychiatric medication."  Id. at 6.  On the basis of her initial
evaluation, Dr. Baecht concluded that Gomez did not "currently suffer[ ] from symptoms
of a major mental disease or defect."  Id.  Dr. Baecht also noted that, following this initial
evaluation, she saw Gomez routinely during his stay at MCFP Springfield, and he
"never displayed any signs or symptoms of psychosis, mood disturbance, or
neurocognitive deficits."  Id.

    Dr. Baecht also reported that, while at MCFP Springfield, Gomez
"lost his job in Food Service after he was suspected of stealing food."  Id. at 7.  Gomez
met with Dr. Baecht "frequently to complain about his perception of being unfairly
removed from his job and to update [Dr. Baecht] on his efforts to obtain another job."  Id.

During these meetings, Gomez's "thinking appeared rational, and he made sound points regarding why he believed his removal from Food Service was unfair."  Id.  Dr. Baecht noted that "[d]uring these interactions, there was no evidence of any type of mental illness or cognitive deficits."  Id.

Although Gomez completed psychological testing while at MCFP Springfield, Dr. Baecht concluded that his scores "fell well below his demonstrated intellectual abilities" as demonstrated by the fact that Gomez earned a GED in 2002 and was able to communicate clearly and coherently with Dr. Baecht in written notes.  Id. at 8-9.  Gomez also "appeared distracted during some portions" of two tests, and answered some questions in a manner that rendered at least one of his test results invalid.  Id.  Gomez also "endorsed a large number of psychiatric symptoms suggestive of over-reporting of symptoms."  Id. at 9.  Overall, Dr. Baecht reported that Gomez "did not appear to put forth his best effort during most of the assessment instruments that were administered to him with the exception of [one] . . . which indicated normal memory functioning."  Id. at 10.

Ultimately, Dr. Baecht concluded that Gomez "does not meet the diagnostic criteria for a mental disease or defect," although she did diagnose him with "Cannabis and Phencyclidine Use Disorder."  Id.  Dr. Baecht also concluded that Gomez "appears to have a rational and factual understanding of the nature and potential consequences of the proceedings against him and the ability to assist properly in his defense."  Id. at 13.  Dr. Baecht based this last conclusion on interviews with Gomez in which he correctly and coherently explained the charges pending against him and the events that led to his arrest; correctly identified his counsel; "demonstrated a good factual and

rational understanding of the roles of various members of the courtroom"; accurately identified and explained possible plea options, including not guilty, guilty, and not guilty by reason of insanity; and explained his "intended plea and offered a rational explanation for his decision" to Dr. Baecht.  Id. at 11-13.

    B.    Hearing Testimony

At the competency hearings held on April 20, 2016, and May 18, 2016, the court heard testimony from Dr. Pietz, Dr. Wasser, and Dr. Baecht.[5]  All three defended the conclusions they had reached in their reports and the methodologies they had used to reach those conclusions.  In particular, Dr. Pietz and Dr. Baecht continued to believe that, at the time of their evaluations and reports, Gomez was competent to stand trial, while Dr. Wasser continued to believe that Gomez was not competent to stand trial.

In addition to explaining the conclusions in their reports, at the competency hearings in April and May, 2016, Dr. Baecht and Dr. Wasser reported on the results of additional evaluations of Gomez they had conducted since their reports were authored.

Dr. Wasser met with Gomez on January 19, 2016, and April 18, 2016, for approximately one to one-and-a-half hours each time.  Dr. Wasser testified that, based on these meetings, he could say with a reasonable degree of certainty that Gomez is not presently competent to stand trial.  Dr. Wasser testified that Gomez reported a history of auditory hallucinations,[6] was paranoid, evinced a thought disorder, and

---

[5] As noted earlier, Dr. Brauman and Dr. Pietz testified at a previous competency hearing held on December 16, 2014, see Minute Entry (Doc. No. 57); Witness List (Doc. No. 56), subsequent to which the court committed Gomez to the custody of the Attorney General for a second, four-month period of evaluation and treatment, see Order Committing Def. for Competency Evaluation and Treatment (Doc. No. 96).

[6] Dr. Wasser testified that the last time Gomez had a psychotic episode that required inpatient treatment was 2005.

displayed cognitive deficits, among other things.  In addition, Dr. Wasser testified that Gomez's results on the psychological testing conducted by Dr. Baranoski in February 2015 showed no evidence that he was malingering or otherwise attempting to influence the results of the test.  Thus, Dr. Wasser concluded that Gomez is not able to understand the proceedings against him or to work meaningfully with his attorneys at this time.

Dr. Baecht met with Gomez on the morning of May 18, 2016.  Dr. Baecht testified that nothing in that meeting caused her to change her opinion, expressed in her report, that Gomez is competent to stand trial at this time.  Dr. Baecht reiterated her belief that Gomez does not suffer from a mental disease or defect, and that he has a good understanding of the charges against him, including what the charges are, the kinds of sentences to which he could be exposed if found guilty, and the roles of the various people in the case, including his attorneys, counsel for the government, the undersigned, and the jury.  Dr. Baecht also testified that she believes Gomez has the ability to assist his lawyers with his defense, and she used his behavior after he was fired from his job in Food Service while at MCFP Springfield, which included seeking her out and making sound points about why the manner in which he had been treated was unfair, as an example of his ability rationally and logically to communicate valid thoughts and concerns to people tasked with helping him.  Dr. Baecht testified that, although Gomez told her he had experienced auditory hallucinations in the past, he had not had auditory hallucinations for a long time.  Finally, Dr. Baecht noted that Gomez did not put forward his best effort on the psychological tests she had administered to him, which affected the results.

C.    <u>Analysis</u>

As the foregoing summary of the evidence in this case makes clear, there is little dispute over many of the essential facts related to Gomez's competency, and some of the facts that are arguably in dispute—such as whether Gomez is currently, or has recently, experienced auditory hallucinations—appear to be in dispute because Gomez has self-reported different things to different mental health professionals.  Instead, what is at issue is what the largely undisputed facts mean with respect to Gomez's ability to (1) consult with his lawyers "with a reasonable degree of rational understanding," and (2) to have a "rational as well as factual understanding of the proceedings against him." <u>Dusky</u>, 362 U.S. at 402.  Although the court found Dr. Wasser to be credible, the court ultimately concludes, by a preponderance of the evidence,[7] that Gomez is presently competent to stand trial on the charges against him.

In reaching this conclusion, the court notes that it found Dr. Baecht to be a highly credible witness.  Dr. Baecht is very experienced; she testified that she has done more than 700 competency evaluations in a career spanning more than sixteen years.  More importantly, she had the opportunity to observe and evaluate Gomez's behavior over a four month period, during which time she met with him a minimum of once per week. The amount of time Dr. Baecht spent observing and interacting with Gomez is significantly greater than that of Dr. Wasser, who met with Gomez two times for a total of approximately four hours prior to writing his report, and an additional two times for a

---

[7] The court notes that this case does not fall within the "narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." <u>Nichols</u>, 56 F.3d at 410 (quoting <u>Medina</u>, 505 U.S. at 449).  Thus, the court would conclude that Gomez is competent regardless of whether the burden of proof was allocated to Gomez or to the government.

total of approximately four additional hours prior to testifying at the competency hearing on May 18, 2016.  The length of time Dr. Baecht was able to observe and interact with Gomez strikes the court as particularly important in this case, given that significant amounts of the analysis set forth by Dr. Wasser and the other mental health professionals who evaluated Gomez depend on Gomez's self-reporting of symptoms, which has not been consistent over time.[8]  Relatedly, the court finds important the fact that Dr. Baecht's report is the most recent of the reports prepared in conjunction with these competency proceedings.[9]

Although the court found Dr. Wasser to be a highly qualified and credible witness, a number of facts cut against, and ultimately cause the court respectfully to reject, his conclusion that Gomez is not competent to stand trial at this time.  First, and as noted above, Dr. Wasser met with Gomez twice for a total of approximately four hours prior to writing his report, which contrasts sharply with the period of time in which Gomez met with, and was observed by, Dr. Baecht.[10]  Relatedly, Dr. Wasser's report

---

[8] The court also notes that Gomez's self-reports are called into question by the fact that there is conflicting evidence about whether Gomez has a history of malingering.  Although Dr. Wasser testified that there was no evidence that Gomez was malingering or exaggerating his symptoms on the psychological tests administered to him by Dr. Baranoski, Dr. Wasser and Dr. Baecht both report that Gomez's records reveal that he has been suspected of malingering and manipulative behavior by mental health professionals in the past.

[9] Inversely, given that approximately two years and as many as two periods of inpatient competency restoration treatment have passed between the completion of Dr. Brauman's and Dr. Pietz's reports and the current proceedings, the court regards those reports as stale and accords them little weight.  The court accords more weight to the report and testimony of Dr. Wasser; although Dr. Wasser's report was completed in February and March of 2015, Dr. Wasser met with Gomez twice in early 2016 and thus had a relatively recent, albeit limited, set of interactions on which to base his opinions regarding Gomez's present competency.

[10] Dr. Baecht testified that she met with Gomez a minimum of once per week during his second, four-month period of competency restoration treatment at MCFP Springfield.

was based in large part on Gomez's self-reporting of symptoms,[11] whereas Dr. Baecht had the opportunity to observe Gomez on a day-to-day basis over the course of several months. Finally—and perhaps most importantly—many facts in Dr. Wasser's report support the determination that Gomez is presently competent to stand trial. For example, Dr. Wasser noted that, during his evaluation, Gomez was able to "correctly state the names and total number of charges against him, as well as provide a factual and rational account of the allegations against him." Wasser Report at 15 (Doc. No. 78-1). In addition, Gomez appears to have been able to communicate with Dr. Wasser with little difficulty, which also tends to support the conclusion that Gomez is able effectively to consult with people tasked with assisting him, when he so chooses. In sum, portions of Dr. Wasser's report are part of the evidence that establishes, by a preponderance, that Gomez is competent to stand trial.

With regard to the specific prongs of the Dusky test, the court notes, and credits, Dr. Baecht's testimony and report regarding Gomez's behavior with respect to the disciplinary situation that unfolded during his stay at MCFP Springfield—and, in particular, the fact that he sought out Dr. Baecht and was able clearly, coherently, and rationally to communicate to her why he felt he was being unfairly disciplined. This behavior is a good illustration (although not the only proof) of Gomez's ability rationally and reasonably to consult with people who he believes can help him when he so

---

[11] The court acknowledges that Dr. Wasser also had the benefit of psychological testing performed by Dr. Baranoski, and that this testing suggested that Gomez was not malingering or feigning his psychiatric symptoms. See Wasser Report at 18 (Doc. No. 78-1). However, the court finds that the evidentiary weight of these psychological tests is somewhat undercut by the fact that the two other mental health professionals who administered psychological tests to Gomez reported that at least some of his results were invalidated by his apparent lack of effort on the tests. See Brauman Report at 8-9 (Gov't's Ex. 12) (Doc. No. 146); Baecht Report at 8-9 (Gov't's Ex. 4) (Doc. No. 142).

chooses.  In this same vein, the court notes it had the opportunity to observe Gomez during the competency hearings on April 20, 2016, and May 18, 2016; during both hearings, Gomez appeared to be alert, engaged, and able to follow the proceedings as they unfolded, as well as able to interact normally with his lawyers.  For these reasons, the court finds that a preponderance of the evidence supports the conclusion that Gomez is able to consult with his lawyers "with a reasonable degree of rational understanding," Dusky, 362 U.S. at 402, and to assist with his defense.

With respect to the second prong of the Dusky test, Dr. Baecht and Dr. Wasser both agree that Gomez is able correctly to identify the pending criminal charges, as well as "provide a factual and rational account of the allegations against him."  Wasser Report at 15 (Doc. No. 78-1).  Dr. Baecht also reported, and the court finds, that Gomez understands the sorts of sentences to which he could be exposed if found guilty, as well as the various plea options available to him.  In sum, a preponderance of the evidence supports the conclusion that Gomez has a "rational as well as factual understanding of the proceedings against him."  Dusky, 362 U.S. at 402.

For the foregoing reasons, the court finds that Gomez satisfies both prongs of the Dusky standard and is presently competent to stand trial on the charges against him. Although the court acknowledges that Gomez has, in the past, suffered from psychosis that likely was substance induced, the court finds that Gomez is not presently psychotic, nor does he possess any other mental disease or defect that renders him incompetent at the present time.  The court reaches this conclusion primarily on the basis of the report and testimony of Dr. Baecht, whom the court finds to be a highly credible witness, as well as the court's own observations of Gomez at the competency hearings.

**IV.     CONCLUSION**

For the foregoing reasons, the court concludes Gomez is competent to proceed

to trial on the charges pending against him.  The case will be set down for jury selection.

**SO ORDERED**.

Dated at New Haven, Connecticut this 21st day of June, 2016.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge